# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### WESTERN DIVISION

LAL BHATIA                                  **PETITIONER**

VERSUS                        **CIVIL ACTION NO. 5:13-cv-74-DCB-MTP**

ERIC HOLDER, CHARLES E. SAMUELS, Jr.,
and VANCE LAUGHLIN                    **RESPONDENT**

*(stamp: SOUTHERN DISTRICT OF MISSISSIPPI FILED SEP 12 2014 BY ARTHUR JOHNSTON DEPUTY)*

## PETITIONER LAL BHATIA'S OBJECTION TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS

## Table of Contents

1   The R&R Follows A Fundamentally Flawed Approach: Habeas Is Available To Test The Legality of Petitioner's Detention As The Proceedings Before The California District Courts Were A Miscarriage of Justice........................................................................1

2   In Addition To Wig's Engineering, As Cases 1 And 2 Were Related And Part Of The Same Scheme And/Or Course Of Conduct, And The Sentence Was Calculated With A CHC-I, Case 1 For Sentence Calculation Purposes Was Never Discharged..................................18

    The R&R did not apply the well-established Standard of Review................................................21

    BOP and/or Sentencing Court Made a Procedural Error...............................................................22

    The Procedural Error was not Harmless.............................27

    The Sentence is Unreasonable..............................................30

    Conclusion...................................................................................33

## Table of Authorities

**Cases:**

*Berger v. United States*, 295 U.S. 78, 88 (1935)..........................................15

*Bowen v. Johnston*, 306 U.S. 19, 26-27 (1939)............................................7

*Brecht v. Abrahamson*, 507 U.S. 619, 652 (1993)........................................16

*Castellano v. Fragozo*, 352 F.3d 939, 942 (5th Cir. 2003) (en banc)...........2

*Castro v. United States*, 540 U.S. 375, 386 (2003).....................................3

i

*Chin Yow v. United States*, 208 U.S. 8, 11-13 (1908)......................................7

*Devereaux v. Abbey,* 263 f. 3d 1070, 1074-75 (9th Cir 2001) (en banc).......2

*Dugger v. Adams*, 489 U.S. 401, 414 (1989)................................................10

*Engle v. Isaac*, 456 U.S. 107, 135, (1982)....................................................14

*Ex parte Hawk*, 321 U.S. 114, 118 (1944).....................................................8

*Fay v. Noia*, 372 U.S. 391, 401-02, (1963)....................................................5

*Gall v. United States*, 552 U.S. 38, 51, (2007)....................................21,22,24

*Glasgow v. Moyer*, 225 U.S. 420 (1912)........................................................8

*Gomori v. Arnold,* 533 F.2d 871, (3rd Cir. 1976)........................................20

*Greenlaw v. United States*, 554 U.S. 237, 244 (2008)..................................3

*Gregory v. City of Louisville,* 444 F. 3d 725, 744-45 (6th Cir. 2006)...........2

*Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)..........................................5,14

*Harris v. Nelson*, 394 U.S. 286, 291 (1969)..................................................5

*Henry v. Henkel*, 235 U.S. 219 (1914).........................................................8

*Hensley v. Mun. Court, San Jose*, 411 U.S. 345, 350 (1973).......................5

*Herrera v. Collins*, 506 U.S. 390, 402 (1993)..........................................2,3,6

*House v. Bell*, 547 U.S. 518, 522 (2006)......................................................6

*Jackson v. Virginia*, 443 U.S. 307 (1979).....................................................2

*Johnson v. Zerbst*, 304 U.S. 458, 467 (1938)...............................................7

*Jones v. Cannon,* 174 F.3d 1271, 1289 (11th Cir. 1999)...............................2

*Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992).........................................6

*Kimbrough v. United States*, 552 U.S. 85 (2007).....................................26,28

*Kuhlmann v. Wilson*, 477 U.S. 436, 453 (1986)......................................5,6,14

*Kwock Jan Fat v. White*, 253 U.S. 454, 457-48 (1920)................................7

*Lee v. Lampert*, 653 F.3d 929, 932 (9th Cir.2011) (en banc)......................6

*Limone v. Condon,* 372 F. 3d 39, 44-45 (1st Cir. 2004)............................2,15

*Mathews v. Eldridge*, 424 U.S. 319 , 335 (1976)..........................................5

*McCleskey v. Zant*, 499 U.S. 436, 494-95 (1991).........................................6

*McQuiggin v. Perkins*, 133 S.Ct. 1924, 1936 (2013).....................................8

*Miller v. Pate*, 386 U.S. 1, 7 (1967)..............................................................16

*Mooney v. Holohan*, 294 U.S. 103 (1935)....................................................16

*Moore v. Dempsey* 261 U.S. 86, 91 (1923)...................................................7

*Napue v. Illinois,* 360 U.S. 264, 269 (1959)..................................................16

*O'Neal v. McAninch*, 513 U.S. 432, 445 (1995)................................18

*Pierce v. Gilchrist,* 359 F. 3d 1279, 1293 (10th Cir. 2004)...........................2

*Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).................................14

*Ricciuti v. NYC Transit Auth.*, F 3d 123, 130 (2d Cir. 1997)........................2

*Rita v. United States*, 551 U.S. 338, 347 (2007)...........................................25

*San Martin v. McNeil*, 633 F.3d 1257, 1267-68 (11th Cir.2011)...................6

*Sandoval v. Jones*, 447 Fed.Appx. 1, 4-5 (10th Cir.2011)............................6

*Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001)................................3

*Schlup v. Delo*, 513 U.S. 298, 327, (1995)......................................................6,7

*Skelton Whitley*, 950 F.2d 1037, 1043 (5th Cir. 1992)..................................3

*Smith v. O'Grady*, 312 U.S. 329, (1941)........................................................8

*Strickland v. Washington*, 466 U.S. 668, 697 (1984)......................................5

*United States v. Maloney*, 2014 WL 801450* 1 (9th Cir. 2014)................. 15

*United States v. Vargem*, 2014 WL 1318855* 5 (9th Cir. 2014)...................24

*United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 153-54 (1923)........3

*United States v. Addonizio*, 442 U.S. 178, 185 (1979)..................................6

*United States v. Blinkinsop*, 606 F.3d 1110, 1114 (9th Cir.2010).................21

*United States v. Blue*, 557 F.3d 682, 686 (6th Cir.2009)............................25

*United States v. Booker*, 543 U.S. 220, (2005)........................................22,30

*United States v. Burns*, 526 F.3d 852, 862 (5th Cir.2008).........................26,27

*United States v. Carty*, 520 F.3d 984, 991-93 (9th Cir.2008).....................21

*United States v. Chea*, 231 F.3d 531, 538 (9th Cir.2000)............................24

*United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir.2008)......20

*United States v. Crowe*, 563 F.3d 969, 977 n. 16 (9th Cir.2009)................30

*United States v. Cruz-Gramajo*, 570 F.3d 1162, 1175 (9th Cir. 2009)...........20

*United States v. Davis*, 316 Fed.Appx. 328, 332 (5th Cir.2009)................27

*United States v. Delgado-Martinez*, 564 F.3d 750, 753 (5th Cir.2009)......27

*United States v. Doe*, 705 F.3d 1134, 1154 (9th Cir.2013)............................22

*United States v. Dorvee*, 616 F.3d 174, 183-184 (2d cir. 2010)...................30

*United States v. Fraga*, 704 F.3d 432, 440 (5th Cir.2013)...........................24

*United States v. Garcia*, 655 F.3d 426, 432 (5th Cir.2011)..........................27

*United States v. Hale*, 422 U.S. 171 (1975).................................................3

*United States v. Ibarra-Luna*, 628 F.3d 712 (5th Cir.2010)........................28

iii

*United States v. Jones*, 664 F.3d 966, 974 (5th Cir. 2011)............................5

*United States v. Kojayan*, 8 F.3d 1315, 1323 (9th Cir.1993)........................15

*United States v. Labeille Soto*, 163 F.3d 93, 99-100 (2d Cir.1998)..............31,32

*United States v. Martin*, 371 F.App'x 602, 606 (6th Cir. 2010)....................31

*United States v. Neal*, 578 F.3d 270, 274 (5th Cir.2009)............................21,27

*United States v. Omole*, 523 F.3d 691, 700 (7th Cir. 2008)..........................31

*United States v. Paul*, 561 F.3d 970, 975 (9th Cir. 2009)..............................30

*United States v. Peltier*, 505 F.3d 389, 391-92 (5th Cir.2007)....................31

*United States v. Rangel*, 697 F.3d 795, 801 (9th Cir.2012)..........................25

*United States v. Ressam*, 679 F.3d 1069, 1089 (9th Cir.2012)....................30

*United States v. Rutledge*, 28 F.3d 998, 1003 (9th Cir.1994).....................21

*United States v. Taylor*, 648 F.3d 417, 429 (6th Cir. 2011)...........................30

*United States v. Winters*, 174 F.3d 478, 482 (5th Cir.1999)........................27

*Washington v. Wilmore*, 407 F. 3d 274, 282 (4th Cir. 2005).......................2

*Whitlock v. Brueggemann*, 682 F.3d 567, 585 (7th Cir. 2012)....................2

*Williams v. United States*, 503 U.S. 193, 203 (1992)..................................27

*Wilson v. Lawrence Cnty.*, 260 F. 3d 946, 954 (8th Cir. 2001)....................2

*Winship In re.*, 397 U.S. 358, 364 (1970).....................................................3

*Yarris v. County of Deleware*, 465 F. 3d 129, 138-39 (3d Cir. 2006).........2

## Constitution, Statutes and Guidelines:

U.S. Constitution, Fifth Amendment.............................................................17

U.S. Constitution, Fourteenth Amendment................................................ 16,17

5 U.S.C. § 702......................................................................................... 1,13

18 U.S.C. § 3553(a)..................................................................................20-30,

18 U.S.C. § 3584........................................................................................26

18 U.S.C. § 3584(a)..............................................................................18,31,32

18 U.S.C. § 3621(b)....................................................................................20

28 U.S.C. § 1331........................................................................................1,13

28 U.S.C. § 1651........................................................................................1,13

28 U.S.C. § 2241...................................................................................1,8,15,16,

28 U.S.C. § 2241 (c)(1).............................................................................1,13

28 U.S.C. § 2241 (c)(3).............................................................................1,13

28 U.S.C. § 2255.......................................................................6,10,12,14,20

U.S.S.G. § 1B1.1.......................................................................23

U.S.S.G. § 3D1.2(d)...................................................................30

U.S.S.G. § 5G1.3.......................................................................25

U.S.S.G. § 5K2.0.......................................................................32

U.S.S.G. § 5K2.23.....................................................................20,23,25,29

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### WESTERN DIVISION

**LAL BHATIA**                                                      **PETITIONER**

**VERSUS**                                    CIVIL ACTION NO. 5:13-cv-74-DCB-MTP

**ERIC HOLDER, CHARLES E. SAMUELS, Jr.,**
**and VANCE LAUGHLIN**                                          **RESPONDENT**

## PETITIONER LAL BHATIA'S OBJECTION TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS

On August 25, 2014, Petitioner received the Magistrate Judge's Report and Recommendations, [33] (R&R) recommending that Petitioner's request for relief pursuant to 28 U.S.C. § 2241 be denied. The R&R departs drastically from the norms that inform the proper judicial function. That extraordinary R&R was erroneous in several respects and should be reversed. Within the time requirement requested, Petitioner hereby, on or before September 12, 2014, respectfully files his Objections to the R&R.

1.   **THE R&R FOLLOWS A FUNDAMENTALLY FLAWED APPROACH: HABEAS IS AVAILABLE TO TEST THE LEGALITY OF PETITIONER'S DETENTION AS THE PROCEEDINGS BEFORE THE CALIFORNIA DISTRICT COURTS WERE A MISCARRIAGE OF JUSTICE**

Without even the most casual admission that it is discarding longstanding habeas corpus jurisprudence, the R&R not only fails to acknowledge that Petitioner added 5 U.S.C. § 702; 28 U.S.C. § 1331, 28 U.S.C. § 1651 as additional sources of jurisdiction, ([1] at ¶¶ 2-4, 94, 106, 113, 125); but also, 28 U.S.C. § 2241 (c)(1) and (c)(3) confers jurisdiction on the district court to hear applications for habeas corpus filed by any person imprisoned "under or by color of the authority of the United States," or "in violation of the Constitution or laws or treaties of the United States." [R&R] at pp 9-11. Further, it affirmatively, misstates material facts, and performs an independent reconstruction of the record. Applying this new rule, the R&R, in

essence, ignores the miscarriage of justice experienced before the California District Courts, while encouraging the government to incarcerate innocent individuals based on unopposed fabricated evidence. Because one cannot acquiesce in this unjustifiable assault on the Great Writ, the R&R should be reversed. *Cf.* (R&R [33] at pp. 1-2) *with* (Petition [1] ¶¶ 22, 23, 24, 25, 26, 36, 37, 38, 40). *See also* [1] p. 39 Counts 3 and 4. [1]

Similarly, the R&R confuses relevant legal questions and, notably, completely ignores well-settled Supreme Court and appellate court authorities that have held a federal habeas court may review a claim that the evidence adduced at the prior criminal proceeding was not sufficient to convict a criminal defendant beyond a reasonable doubt. *Herrera v. Collins*, 506 U.S. 390, 402 (1993) quoting *Jackson v. Virginia*, 443 U.S. 307 (1979),  But in so holding, the Supreme Court emphasized:

> "[T]his inquiry does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.' Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable  inferences from basic facts to ultimate facts." *Id.*, at 318-319 (citations omitted; emphasis in original).

The Court specifically noted that "the standard announced ... does not permit a court to make its own subjective determination of guilt or innocence." *Id.*, at 402, citing, *Jackson*, 433 U.S. at 320, n. 13.

Thus, based on the acknowledgment that "Manmohan "Mon" Wig engineered the

---

1   "[A]ll courts that have directly confronted the question ... agree that the deliberate manufacture of false evidence contravenes the Due Process Clause." *Whitlock v. Brueggemann*, 682 F.3d 567, 585 (7th Cir. 2012), *cert. denied* 133 S. Ct. 981 (2013). This judicial agreement includes ten circuit courts. *See Limone v. Condon,* 372 F. 3d 39, 44-45 (1st Cir. 2004) (describing as "self-evident" that deliberate fabrication of evidence is unconstitutional); *Ricciuti v. NYC Transit Auth.,* F 3d 123, 130 (2d Cir. 1997); *Yarris v. County of Deleware,* 465 F. 3d 129, 138-39 (3d Cir. 2006); *Washington v. Wilmore,* 407 F. 3d 274, 282 (4th Cir. 2005); *Castellano v. Fragozo,* 352 F.3d 939, 942 (5th Cir. 2003) (en banc); *Gregory v. City of Louisville,* 444 F. 3d 725, 744-45 (6th Cir. 2006); *Whitlock,* 682 F. 3d at 585-86; *Wilson v. Lawrence Cnty.,* 260 F. 3d 946, 954 (8th Cir. 2001); *Devereaux v. Abbey,* 263 f. 3d 1070, 1074-75 (9th Cir 2001) (en banc); *Pierce v. Gilchrist,* 359 F. 3d 1279, 1293 (10th Cir. 2004); *Jones v. Cannon,* 174 F.3d 1271, 1289 (11th Cir. 1999). No circuits depart from this rule.

trumped-up investigations that led to Mr. Bhatia's convictions and incarcerations in Cases 1 and 2 to conceal Mon Wig's specific money laundering crimes," ([R&R] at p. 10); and, "Won (sic) Wig, along with the FBI agent and assistant United States attorney, fabricated facts to mislead the grand jury to indict Plaintiff (sic) in order to conceal Mon Wig's unlawful activities," ([R&R] at p. 10 n.3), contrary to the R&R's "inadequate and ineffective" analysis, ([R&R] at p. 11), the claim ought to have been analyzed under *Jackson v. Virginia.*

In *Herrera*, the Court explained, first, the *Jackson* inquiry is aimed at determining whether there has been an independent constitutional violation--*i.e.*, a conviction based on evidence that fails to meet the *Winship* standard. [2] Consequently, federal habeas courts act in their historic capacity--to assure that the habeas petitioner is not being held in violation of his or her federal constitutional rights. Second, the sufficiency of the evidence review authorized by *Jackson* is limited to "record evidence." 443 U.S., at 318. *Jackson* does not extend to non-record evidence, including newly discovered evidence. Finally, the *Jackson* inquiry does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather, whether it made a rational decision to convict or acquit. *Id. Herrera*, 506 U.S. at 402, accord *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001).

Even so, several matters, in the record, are clear, for example: It is not only conceded in fact, but also susceptible to a concession in law, [3] first, Mon Wig's partner established that despite Petitioner's innocence, Mon Wig engineered the trumped-up investigation that led to Petitioner's conviction and unlawful detention in order to conceal Mon Wig's money

---

2  "The prosecution must prove beyond a reasonable doubt every element of a charged offense." *Skelton Whitley*, 950 F.2d 1037, 1043 (5th Cir. 1992) (citing *In re Winship*, 397 U.S. 358, 364 (1970)).

3  "Our adversary system is designed around the premise that the parties know what is best for them and are responsible for advancing the facts and arguments entitling them to relief." *Greenlaw v. United States*, 554 U.S. 237, 244 (2008) (quoting *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring)). *See also United States v. Hale*, 422 U.S. 171, 176 (1975) (Failure to contest an assertion is considered evidence of acquiescence only if it would have been natural under the circumstances to object to the assertion in question) *See also United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 153-54 (1923))(same).

3

laundering crimes. *See* [1] at ¶ 72 and Second Stage – Formal Grievance (28 C.F.R. § 542.14), ¶ 21, fn. 12.

It is also conceded that Mon Wig himself conclusively established that he and his attorneys, through AUSA Corrigan, FBI agent Berry and others deliberately fabricated facts to mislead the grand jury to indict Petitioner, that led to his unlawful detention, in order to conceal and protect Mon Wig's money laundering activities; *See* [R&R] at p. 10; n. 3; and [1] ¶¶ 22-23, (Mon Wig's engineering);

It is also conceded that without reconciling the accuracy and reliability of the coerced guilty plea in light of the evidence conclusively establishing Mon Wig's engineering, the California District Court accepted the guilty plea, resulting in a fundamentally unjust incarceration. *Id.* [1] at ¶ 24;

It is also conceded that even after the California District Court accepted the guilty plea, and before Petitioner was sentenced, resulting in Petitioner's unlawful incarceration, further unopposed evidence establishing and detailing Mon Wig's engineering were ignored. *Id.* [1] at ¶ 25;

It is also conceded that even after the guilty plea was accepted, and before Petitioner was sentenced, resulting in Petitioner's unlawful detention, in furtherance of the miscarriage of justice, the California District Court ignored the Department of Treasury, FinCEN's documents related to Mon Wig's specific money laundering activities establishing that FBI were aware of Mon Wig's crimes since, at least, July 1992 – *predating* Petitioner's 2004 indictment. *Id.* [1] at ¶ 26;

It is also conceded that even after Petitioner was sentenced, when the prosecution acknowledged that Mon Wig 'may have' engineered the trumped-up investigation that led to Petitioner's convictions, in order to conceal Mon Wig's specific money laundering crimes

using the services of BCCI, the California District Court continued to ignore Wig's engineering, despite the possibility that an innocent person has been wrongly incarcerated. [1] at ¶¶ 40-41;

And thus, contrary to the R&R's attempt to downplay Petitioner's actual innocence and constitutional violation claim, (R&R at pp. 9-12) while giving credence to the California District Courts' summaries (R&R at pp. 1-2), it cannot, based on the standard of review at this level, [4] be disputed that Petitioner is entitled to habeas relief, as his incarceration, based on Wig's engineering and the miscarriage of justice experienced before the California District Courts, as a matter of law, is in violation of the Constitution, laws and treaties of the United States. *See for eg., Kuhlmann v. Wilson*, 477 U.S. 436, 453 (1986) (The fundamental miscarriage of justice exception is available "only where the prisoner supplements his constitutional claim with a colorable showing of factual innocence.").

The Writ's lofty purpose has been described variously as "to provide a prompt and efficacious remedy for whatever society deems to be intolerable restraints," *Fay v. Noia*, 372 U.S. 391, 401-02, (1963), and "to insure that miscarriages of justice within [the courts'] reach are surfaced and corrected," *Harris v. Nelson*, 394 U.S. 286, 291 (1969); *see also Strickland v. Washington*, 466 U.S. 668, 697 (1984) (noting that "fundamental fairness is the central concern of the writ of habeas corpus"). As the writ serves as a catchall for alleged wrongs that are incapable of redress under other provisions of the law, petitions must be reviewed by courts with "initiative and flexibility." *Harris*, 394 U.S. at 291; *see also Hensley v. Mun. Court, San Jose Milpitas Judicial Dist.*, 411 U.S. 345, 350 (1973).

---

4  The purpose being to address the "risk of erroneous deprivation," the standard of review at this level is limited to determining which is more persuasive, the Respondent's say-so or the Petitioner's unopposed facts, on the issue whether the petitioner's imprisonment under or by color of the authority of the United States, is in violation of the Constitution or laws or treaties of the United States. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)(quoting *Mathews v. Eldridge*, 424 U.S. 319 , 335 (1976)) accord *United States v. Jones*, 664 F.3d 966, 974 (5th Cir. 2011).

Rather than applying the traditional exception to procedural limits on the writ – the "fundamental miscarriage of justice exception" *Herrera*, 506 U.S. at 404, the R&R erroneously supplies the most perplexing suggestion, (*id.* at p. 11) ("Petitioner has failed to come forward with any evidence to show the inadequacy or ineffectiveness of a motion under Section 2255"), to bar the claim.

However, under the miscarriage of justice exception a court would consider a procedurally barred constitutional claim if a petitioner could show it was more likely than not that no reasonable juror would have convicted him in light of the evidence, *Schlup v. Delo*, 513 U.S. 298, 327, (1995). The purpose of the miscarriage of justice exception is to relieve a litigant from court created procedural bars. *See Kuhlmann v. Wilson*, 477 U.S. at 449-52 (exception applied to bar against successive petitions); *McCleskey v. Zant*, 499 U.S. 436, 494-95 (1991) (exception applied to bar against abusive petitions); *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992) (exception applied to bar based on failure to develop facts in the criminal court); *House v. Bell*, 547 U.S. 518, 522 (2006) (exception applied to bar against procedural default); *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (exception applied to bar for non-constitutional errors asserted in habeas).

Further, a Petitioner who makes [a credible showing of actual innocence] may pass through the *Schlup* gateway and have his otherwise time-barred claims heard on the merits. *Lee v. Lampert*, 653 F.3d 929, 932 (9th Cir.2011) (en banc); [5] *see also for eg., Sandoval v. Jones*, 447 Fed.Appx. 1, 4-5 (10th Cir.2011) ("We recognize, of course, that § 2244(d)'s procedural bar does not extend to preclude this court from entertaining claims of actual innocence."); *San Martin v. McNeil*, 633 F.3d 1257, 1267-68 (11th Cir.2011) (A court may

---

5    "To pass through the *Schlup* gateway, a 'petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.' " *Lee*, 653 F.3d at 938 (quoting *Schlup v. Delo*, 513 U.S. 298, 327, (1995)).

consider a procedurally barred habeas petition if, by refusing to consider the petition for untimeliness, the court thereby would endorse a fundamental miscarriage of justice because it would require that an individual who is actually innocent remain imprisoned."). *Turner v. Romanowski*, 409 Fed.Appx. 922, 926 (6th Cir.2011) ("The actual innocence exception allows for equitable tolling if the petitioner presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial.").

Additionally, it is also well settled that habeas is available when the Petitioner alleges that the United States did not have jurisdiction over the locus of the crime and thus had no jurisdiction to try him. *Bowen v. Johnston*, 306 U.S. 19, 26-27 (1939). Habeas is also available to provide remedy for constitutional violations that, through no fault of the Petitioner cannot be remedied elsewhere. *Johnson v. Zerbst*, 304 U.S. 458, 467 (1938). Habeas is also available when if the prior proceedings fails to provide an adequate "corrective process" to a proceeding dominated by a mob sentiment, Petitioner may review and secure relief by habeas. *Moore v. Dempsey* 261 U.S. 86, 91 (1923). Habeas is also available when the Petitioner establishes in habeas that the earlier proceedings were 'manifestly unfair,' were 'such as to prevent a fair investigation,' or show 'manifest abuse' of the discretion committed to the executive officers by the statute. *Kwock Jan Fat v. White*, 253 U.S. 454, 457-48 (1920). Habeas is also available to fill the void created by an inadequate remedy in a coordinate system of justice. *See eg., Chin Yow v. United States*, 208 U.S. 8, 11-13 (1908).

The R&R cites no language that marks a departure from this longstanding habeas corpus jurisprudence, and simply rehashes arguments that Respondent made. The rule, then, is not one defining power but one which relates to the appropriate exercise of power. *Schlup*, 513 U.S. at 325 (noting that the "concern about the injustice that results from the conviction of an innocent person has long been at the core of our criminal justice system").

It also has special application where, in Petitioner's case, there are essential questions

of his actual innocence that the California District Courts have ignored. *McQuiggin v.*

*Perkins*, 133 S.Ct. 1924, 1936 (2013) ("The gateway should open only when a petition presents

"evidence of innocence so strong that a court cannot have confidence in the outcome of the

trial unless the court is also satisfied that the trial was free of nonharmless constitutional

error.").

Indeed, contrary to the Magistrate Judge's suggestions, (R&R at pp. 5-10) it is

applicable also to the determination in ordinary cases of disputed matters of law, whether

they relate to the sufficiency of the indictment or to the validity of the statute on which the

charge [or detention] is based. *Glasgow v. Moyer*, 225 U.S. 420 (1912); *Henry v. Henkel*, 235

U.S. 219 (1914).

Further, it is equally true that the rule is not so inflexible that it may not yield to

"exceptional circumstances" where the need for the remedy afforded by the writ of habeas

corpus is apparent. *Smith v. O'Grady*, 312 U.S. 329, (1941) (held that habeas corpus was

available to a person convicted upon a plea of guilty inveigled by government officers).

It is therefore, based on rich habeas jurisprudence, the habeas court's duty, rather than

indulge in technical niceties, to examine Petitioner's allegations and unopposed facts in order

to determine whether they show that an innocent Petitioner's incarceration is the result of a

deprivation of rights guaranteed him by the federal Constitution. *Id.* 312 U.S. at 332. Indeed,

as "miscarriage of justice" is alleged, that Respondents have not contradicted, ([1] a ¶¶ 81-

125), "a federal court should entertain the petition for habeas corpus, else [the Petitioner]

would be remediless." *Ex parte Hawk*, 321 U.S. 114, 118 (1944)

By recommending, "Petitioner's request for relief pursuant to 28 U.S.C. § 2241 be

denied," the Magistrate Judge abrogates a pivotal distinction, between run of the mill habeas

petitions and a habeas petition that raises questions, based on unopposed evidence, ignored by the California District Courts, as shown in the Petition, not contradicted by the Respondents, that was before the Magistrate Judge, [6] unanswered. If any Court that encourages incarceration of the innocent by government officials based on unopposed fabricated facts by ignoring the following questions, is not a continuing contribution to "miscarriage of justice" then what is?

- Where are the notes memorializing, including, in exchange for assisting Wig conceal his crimes and diverting the FBI's investigation of Wig to Petitioner, one prosecutor became a California State Court judge and another got a high-paying position in a prestigious law firm?

- Which members of the BCCI's *nom de guerre* Allied Group, conducted questionable financial transactions, that compelled Wig to go through the scheme to divert the FBI's investigation from Wig and the Allied Group to Petitioner?

- Where are the incriminating documents showing Wig engineered the trumped-up investigation that led to Petitioner's conviction, in order to conceal and protect Wig's money laundering crimes?

- Who suppressed them?

- Which of Wig's contacts in the Department of Justice, suggested that Petitioner should take the plea offer or face a second indictment, as the FBI were interested in the source of funds for the projects and they did not think it would be appropriate to expose the members of the Allied Group?

- Which investigation could "open a can of worms" that could result in a lot of answering to do, therefore it was in everyone's best interest that Petitioner plead guilty, so that

---

6  ECF [1] ¶ 22, 23, 25, 26, 40, 41.

many of the questions regarding the Allied Group/BCCI would be buried and the members of the Allied Group/BCCI, for Petitioner's loyalty, would, in turn, "take care" of Petitioner?

- Why was Wig privy to confidential grand jury information and details concerning the second indictment, as even though the second indictment was issued under seal, Wig represented that the second indictment would entail the IH and CO transactions by WTII and SNL, before the indictment was issued?

- Why did the prosecutor and FBI Agent, inform Wig that if any representative of the Allied Group testified they would reopen the investigation of the Allied Group?

- Why did the prosecutor and FBI Agent, knowingly permit Wig create the fictitious financials and other documents for the Allied Group and Sherwin and Noble, that was ultimately found on Petitioner's computers?

- How much time would Wig and his cohorts face if the aforesaid crimes were perused?

Contrary to the suggestion in the R&R, (*id.* at p. 11) ("Petitioner has failed to come forward with any evidence to show the inadequacy or ineffectiveness of a motion under Section 2255"), the complaint here is not the commission of mere procedural error, but of a wrong so fundamental that any rational trier of fact would conclude that the proceedings, in totality, before the California District Courts was a mere pretense that renders the conviction, sentence and detention wholly void. *Eg., Dugger v. Adams,* 489 U.S. 401, 414 (1989) ("[H]abeas review of a defaulted claim is available, even absent cause for default, if the failure to consider the claim would result in a fundamental miscarriage of justice.")

Other than placing considerable emphasis on whether "a 24-month delay in processing § 2255 petitions" is "inadequate or ineffective," (R&R at p. 11) what should have mattered was whether any rational juror could have found the essential elements of the crimes beyond a

reasonable doubt after the full force of the objective persuasiveness of:

(1) It is unopposed by Respondents that, Mon Wig's conclusively established admissions that Petitioner was indicted based on AUSA Corrigan, Agent Berry and others' trumped-up charges, in order to conceal Mon Wig's specific money-laundering crimes, was ignored by the California District Courts. [1] p. 15 n. 9(a);

(2) It is unopposed by Respondents that, the testimony and narration of events establishing that, Petitioner did not seek, endorse, authorize, request, direct nor give the victims permission to part with their money, was also ignored by the California District Courts. [1] p. 15 n. 9(b);

(3) It is unopposed by Respondents that, the victims and their attorney's testimony establishing that the prosecutor and FBI agent knowingly and willfully manipulated and fabricated material facts to cause Petitioner to be indicted, was also ignored by the California District Courts. [1] p. 15 n. 9(c);

(4) It is unopposed by Respondents that, the Texas District Court's veneer of objectivity that any representation, if made, was merely "dinner chit-chat," that could not possibly influence a reasonable person to part with his/her money, as it was, "not even puffing, but nonsense," was also ignored by the California District Court. [1] p. 15 n. 9(d);

(5) It is unopposed by Respondents that, the California District Courts grossly mischaracterized the victims testimony. [1] p. 15 n. 9(e);

(6) It is unopposed by Respondents that, the California Superior Court's judgment establishing that Petitioner did not seek, endorse, authorize, request, direct nor give the victims permission to part with their money, was also ignored by the California District Court. [1] p. 15 n. 9(f);

(7) It is unopposed by Respondents that, without reconciling the accuracy and

11

reliability of the guilty plea in light of the evidence conclusively establishing Mon Wig's engineering, and Petitioner did not seek, endorse, authorize, request, direct nor give the victims permission to part with their money, the California District Court accepted the coerced guilty plea; *supra* at pp. 2-3;

(8) It is unopposed by Respondents that, even after the California District Court accepted the guilty plea further undisputed evidence established and detailed Mon Wig's engineering was also ignored by the California District Court; *supra* at pp. 2-3;

(9) It is unopposed by Respondents that, even after the California District Court accepted the guilty plea the Department of Treasury, FinCEN provided Documents related to Mon Wig's specific money laundering activities establishing that FBI were aware of Mon Wig's crimes since July 1992 – *predating* Petitioner's 2004 indictment, was also ignored by the California District Court; *supra* at pp. 2-3;

(10) It is unopposed by Respondents that, the California District Court continued to ignore Wig's engineering even after on August 3, 2012, the prosecution conceded to the suppression of evidence, showing that Mon Wig engineered the trumped-up investigation that led to Petitioner's convictions, in order to conceal Mon Wig's specific money laundering crimes using the services of BCCI; *supra* at pp. 2-3.

(11) It is unopposed by Respondents that, the California District Court continued to ignore Wig's engineering even after the FBI conceded that they located records related to Wig's engineering but refused to provide it. [1] at ¶ 41.

Finding that, "Petitioner has failed to come forward with any evidence to show the inadequacy or ineffectiveness of a motion under Section 2255," [R&R] at pp. 11-12, does violence to the concept of reason. Undoubtedly, a review of the Petition in light of these unopposed facts and circumstances, would not only establish Petitioner's detention as

unlawful, but, any rational juror would reject the entire prosecution as untrustworthy.

While the R&R gives credence to the California District Courts' summaries of AUSA Corrigan, Agent Berry, Wig and others' trumped-up case, (R&R a p. 1-2) it cannot, however, ignore the fact that the California District Courts have consistently permitted AUSA Corrigan; Agent Berry and others to withhold and/or ignore unopposed favorable information evidently on the perception that only the trumped-up information is believable, by ignoring the undisputed, favorable, accurate, unopposed by Respondents, evidence establishing that Petitioner's detention is fundamentally unlawful.

The very fact that Respondents do not oppose that the California District Courts have not compelled the prosecution and others' to follow the law, and respond to questions, related to Mon Wig's engineering, establishing that an innocent individual has been unlawfully incarcerated, [1] at ¶¶ 37, 40, 41, but allowed Petitioner's conviction in Case 1 to stand, ([1] at ¶ 15), or his coerced guilty plea in Case 2 to proceed, ([1] at ¶ 24), is sufficient to establish the need for a remedy pursuant to 5 U.S.C. § 702; 28 U.S.C. § 1331; 28 U.S.C. § 1651; or 28 U.S.C. § 2241(c)(1) and (c)(3), in *this* Court.

Here, however, while implicitly acknowledging its existence, ([R&R] at p. 10) the R&R errs by recommending, in essence, that AUSA Corrigan; Agent Berry; Wig and others should be permitted to deliberately and intentionally fabricate facts in order to continue to facilitate Mon Wig's engineering. ([R&R] at p. 10, n.3).

Just because Petitioner's attempts continue to be indiscriminately ignored, thwarted and rejected, does not mean that AUSA Corrigan, Agent Berry, Respondents and others are immunized from their constitutionally mandated obligations and Petitioner must continue to be unlawfully incarcerated. Nor is the unopposed pleadings, establishing Wig' and others' engineering, ignored by the California District Courts, dispositive: It's the fact that Mon Wig,

13

AUSA Corrigan, Agent Berry and others' motives and inconsistencies, that continue to exist, admitted by Wig, corroborated by Wig's partner, confirmed by FinCen, conceded by the prosecution and others, ignored by the California District Court, unopposed by Respondents, that establishes Petitioner's innocence and his detention is unlawful, that is material, relevant and reviewable by *this* Court, entitling Petitioner to the remedy requested. [7]

The indiscriminately ignored, rejected and thwarted attempts, memorializing the evidence of deliberate fabrication, that is *not* factually contradicted, underscores the fact that the R&R should be reversed; it cannot provide this Court, contrary to the R&R's extraordinary suggestion, with a reason to continue to ignore this Petitioner's claim of actual innocence and manifest violation of constitutional rights, while acknowledging the possibility that an innocent individual continues to be wrongly incarcerated. ([R&R] at p. 10 n.3). As the Court stated in *Engle v. Isaac*, 456 U.S. 107, 135, (1982), in "appropriate cases," the principles of comity and finality that underlie federal habeas corpus review "must yield to the imperative of correcting a fundamentally unjust incarceration."

Any other conclusion would require one to read "miscarriage of justice," as being applicable only to "inordinate-beyond-24-months-delays in processing § 2255 motions" ([R&R] at p. 11). Instead, "miscarriage of justice," continues to be applicable to cases like Petitioner's, where evidence related to his innocence has not been opposed but, instead, has been and continues to be deliberately and indiscriminately ignored, rejected and thwarted. Despite the suggestion in the R&R, fundamental fairness considerations have long governed the writ's vital role in preventing unjust incarceration. *See e.g., Kuhlmann* 477 U.S. at 447 ("[H]abeas corpus has traditionally been regarded as governed by equitable principles.").

Indeed, the prosecution's belated acknowledgment that Mon Wig "may have"

---

7   Habeas is at its core a remedy for unlawful executive detention. *Hamdi v. Rumsfeld*, 542 U.S. 507, 536, (2004).  The typical remedy is, of course, release.  See, e.g., *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)

engineered the trumped-up investigation to conceal Wig's specific money laundering crimes; admitted by Wig; corroborated by Wig's partner, ratified by FinCen; and undisputed by the FBI; while ignored by the California District Courts and unopposed by Respondents, suggests that California District Courts' findings or summaries on *any* subject cannot be credible. (*Cf.* R&R pp. 1-2).

Information of this sort, when reviewed, would be sufficient for a habeas court to grant relief, contrary to the R&R's assault on the Great Writ, "[i]f any concept is fundamental to our American system of justice, it is that those charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals for crimes they did not commit." *Limone v. Condon,* 372 F.3d, 44-45 (1st Cir. 2004). The R&R turns this fundamental concept on its head. This Court should find, consistent with the uniform habeas jurisprudence, that detaining an innocent individual by knowingly fabricating evidence is unconstitutional and Petitioner's request for relief pursuant to 28 U.S.C. § 2241 should *not* be denied, but granted. *United States v. Maloney,* 2014 WL 801450* 1 (9th Cir. 2014) ("A prosecutor "is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger v. United States,* 295 U.S. 78, 88 (1935)). More succinctly: "The prosecutor's job isn't just to win, but to win fairly, staying well within the rules." *United States v. Kojayan,* 8 F.3d 1315, 1323 (9th Cir.1993).

There is further good reason to believe that *any* proceedings before the California District Courts would continue to be a miscarriage of justice, because *whenever* the California District Courts were provided, on numerous occasions, unopposed evidence of AUSA Corrigan, Agent Berry and Wigs' engineering, they allowed it to go unquestioned and

uncorrected. Indeed, avoiding a miscarriage of justice has been "a unifying theme to this Court's habeas jurisprudence," with the "possibility that an error may have caused the conviction of an actually innocent person [being] sufficient by itself to permit plenary review ..." *Brecht v. Abrahamson*, 507 U.S. 619, 652 (1993) (O'Connor, J., dissenting)

The California District Courts hindered rather than fostered justice throughout the course of this case by permitting AUSA Corrigan, Agent Berry and others, to deliberately continue to maintain reliance on deliberate fabricated, inaccurate and manipulated facts, throughout and beyond the criminal proceedings, well into Petitioner's detention. That deception, has extended not just to Petitioner and his family, defense counsel, witnesses, Probation Office, the Grand, Petite Juries, and BOP, but apparently, the Magistrate Judge as well. Hopefully, this Court would see through the charade?

Where, as here, the California District Courts permitted Wig, AUSA Corrigan and Agent Berry's deception to do more than simply conceal from Petitioner material and compelling evidence of his actual innocence, the intentional failure to recognize and articulate Wig's engineering, permeated the issuance of the indictment, and continued through and beyond Petitioner's incarcerations in Cases 1 and 2. Logic, common sense, and arresting inference dictates that all proceedings before the California District Courts are not only "ineffective," but grossly "inadequate." *See, eg., Miller v. Pate,* 386 U.S. 1, 7 (1967) (More than 30 years ago this Court held that the Fourteenth Amendment cannot tolerate a criminal conviction obtained by the knowing use of false evidence.) (citing *Mooney v. Holohan,* 294 U.S. 103 (1935)); *Napue v. Illinois,* 360 U.S. 264, 269 (1959) (calling the principle that the government "may not knowingly use false evidence ...to obtain a tainted conviction...implicit in any concept of ordered liberty").

The truth pronounced by Theodosian Code, the Justinian Code, Babylonian law,

ancient Jewish law, and the trial of the Duchess of Kingston in 1776 more than a thousand years ago, that '[i]mpartiality is the life of justice,' is just as valid today as it was then. The California District Courts permitted AUSA Corrigan, Agent Berry and others take actions which, in effect, amount to intentional violation of Petitioner's constitutional rights. Independently, contrary to the Magistrate Judge's subjective-ends-justifies-the-means analysis, based on the objective persuasiveness of the record as it stands, the law recommends that Petitioner's request for relief pursuant to 28 U.S.C. § 2241 should be granted.

The constitutions of United States of America and of its states; the rules of evidence; and of procedure; and 200 years of case law promise a full panoply of rights to the accused. But ultimately the guarantee of these rights is no stronger than the integrity and fairness of the judge to whom the legal proceeding is entrusted. As opposed to blind subservience to Respondent's say-so, the task confronting the district court demands an objective analysis, informed by the effect, if any, that the continuing miscarriage of justice experienced before the California District Courts is likely to have any effect on this Petitioner's chances if he attempts to continue to raise the same issues before the California District Courts.

In any event, one does not know which to find more lurid: the base quality of justice that this Petitioner received before the California District Courts, or the R&R's evasion that the Constitution permits an innocent individual to be incarcerated on the basis of false evidence that was deliberately fabricated by the government. One searches the R&R in vain, however, for any mention of this Petitioner's right to being incarcerated free from constitutional defect or his interest in finding a legitimate forum for his constitutional challenge to that detention.

Rather, displaying obvious exasperation with the breadth of substantive habeas doctrine and the expansive protection afforded by the Fifth and Fourteenth Amendments'

guarantee of fundamental fairness in criminal proceedings, the R&R today continues a crusade to erect petty procedural barriers in the path of this federal prisoner who not only maintains his actual innocence, but also asserts constitutional violations during the proceedings before the California District Courts, raising even deeper constitutional concerns. Although the "extraordinary circumstances" exception is narrow, this case--wherein the proceedings before the California District Courts have been appalling--fits squarely into that narrow space.

Consonant with the loose procedural standards, and given that this Petitioner's liberty is at stake, courts are admonished to err on the side of caution when adjudicating petitions: If there is grave doubt that a Petitioner's detention is lawful, then habeas relief should be granted. *See O'Neal v. McAninch*, 513 U.S. 432, 445 (1995). Because the R&R is creating a Byzantine morass of arbitrary, unnecessary, and unjustifiable impediments to the vindication of fundamental federal rights, it should be reversed.

2.    **IN ADDITION TO WIG'S ENGINEERING, AS CASES 1 AND 2 WERE RELATED AND PART OF THE SAME SCHEME AND/OR COURSE OF CONDUCT, AND THE SENTENCE WAS CALCULATED WITH A CHC-I, CASE 1 FOR SENTENCE CALCULATION PURPOSES WAS NEVER DISCHARGED.**

Notwithstanding the undisputed claim of Petitioner's detention is not lawful and the "mob-sentiment" experienced before the California District Courts, Petitioner also contends that, for the reasons shown, he should be entitled to a credit for the time served for Case 1.

The R&R downplays the importance of the following:

(1)    Respondents do not attempt to explain how, in order to continue to deem Case 1 as *another* sentence, the BOP could disregard the sentencing court's findings and determinations that Case 2 was "an attempt" and the "offense was the sole objective of that attempt," and sentenced Petitoner based on a Criminal History Category ("CHC") - I;

(2)     Nor do Respondents deny that 18 U.S.C. § 3584(a)'s default text – *except that the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt* – does not distinguish between decision-makers, circumstances or whether the Cases 1 and 2's terms of imprisonment are imposed at the same or different times. It places limits not only on the judges' authority, but BOP's as well – it is a system-wide declaration;

(3)     Respondents even fail to identify any development establishing that BOP, does in fact have the authority to disregard the sentencing judge's findings and determinations warranting the credit or concurrent-in-practical-effect sentence;

(4)     Nor do Respondents' cite, much less discuss, a single one of the statutes' text, history, tradition, precedent, purpose or context that establish that based on the specific sequential pattern, the plea agreement, the sentencing court's findings and determinations and the default rules, BOP has *no* discretion to deny the credit or run the Case 2 sentence concurrent "in practical effect" to the Case 1 sentence; and,

(5)     Respondents and others have steadfastly refused to contradict that Petitioner's "custody is in violation of Constitution, laws, or treaties of the United States," not only based on the prosecution's – after the case 2 sentence computation – acknowledgment that Mon Wig engineered the trumped-up investigation that led to Petitioner's *custody*, in order to conceal Mon Wig's specific money laundering crimes using the services of BCCI, ("Mon Wig's engineering") but also the denial of any judicial review.

Nevertheless, attempting to reconstruct the claim, the R&R recommends that the Petition is not claiming an error in BOP's *execution* of the sentence but rather in the *imposition* by suggesting:

(a) "Although the motives for committing the crimes in Case 2 may have been to cover

19

up his Crimes in Case 1, Case 2 did not involve a crime of attempt. The sole objective of the Case 2 crimes was not to commit the crimes in Case 1" to find "contrary to Petitioner's argument, the CHC-1 determination cannot be stretched into a judicial finding that Case 2 was "an attempt."" [R&R] at p. 6; [8]

(b) Ignoring the possibility that the sentencing court and by extension BOP made a procedural error in the *execution* of the sentences, the R&R suggests: "Even if Petitioner were eligible for a downward departure under Section 5K2.23, the decision whether to grant such relief was within the sentencing court's discretion, and the sentencing court did not grant the downward departure. There is no indication in the record that the sentencing court intended to adjust Petitioner's sentence under Section 5K2.23." (R&R at p. 7)

(c) Ignoring the challenge of BOP's authority to disregard the fact that Case 1 cannot be considered a separate but part and parcel of the Case 2 sentence, the R&R suggests: "Petitioner provides no authority for this position and the undersigned has found none." In any case, "Petitioner was limited to seeking a reduction in the length of his current sentence from the sentencing court, and as previously discussed, the sentencing court did not adjust Petitioner's sentence under Section 5K2.23." (R&R at p. 9) [9]

Reduced to its essence, the claim – credit for the time served for Case 1 – based on the

---

8   However, contrary to the analysis in the R&R, "[u]nder the Sentencing Guidelines, defendants are assigned criminal history points for prior sentences of imprisonment, provided those sentences satisfy certain requirements. See U.S.S.G. § 4A1.1. The Guidelines define a prior sentence as "any sentence previously imposed upon adjudication of guilt ... for conduct not part of the instant offense." U.S.S.G. § 4A1.2(a)(1). Pursuant to the Guidelines then, the district court may not assign criminal history points for any conduct that was part of the instant offense. See id. An application note to § 4A1.2 explains that "[c]onduct that is part of the instant offense means conduct that is relevant conduct to the instant offense under the provisions of § 1B1.3 (Relevant Conduct)." U.S.S.G. § 4A1.2 cmt.1 (emphasis added). Under U.S.S.G. § 1B1.3(a)(1), "relevant conduct" includes "all acts and omissions committed ... by the defendant ... that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense...." (Emphasis added)." *United Staets v. Cruz-Gramajo*, 570 F.3d 1162, 1175 (9th Cir. 2009)

9   Contrary to the suggestion in the R&R, where prisoner seeking federal habeas corpus challenges effect of events "subsequent" to his sentence on that sentence, habeas corpus remedy is appropriate remedy, rather than section 2255 of this title relating to correction of sentences. *Gomori v. Arnold*, 533 F.2d 871, (3rd Cir. 1976) certiorari denied 97 S.Ct. 140

R&R, can be split into two issues. *First*, if BOP, despite 18 U.S.C. § 3621(b), the terms of the plea agreement and sentencing court's same course of conduct CHC-1 determination, is not responsible to correct the unlawful detention by providing the credit for the time served in Case 1, then the sentencing court committed procedural error by failing to appreciate that it had discretion, based on the terms of the plea agreement, to consider the credit for time served in Case 1 under 18 U.S.C. § 3553(a). ([1] at ¶¶ 81-88) *Second*, in any event, an unjustified sentence of 111 months for Cases 1 and 2, in light of the fact that "[t]he Court, [in case 2], during sentencing found that as Cases 1 and 2 were related and part of the same scheme and/or course of conduct, ordered the sentence to be calculated with a CHC-I, [1] at ¶ 30-31 is an unreasonable sentence and as the detention is "in violation of the Constitution or laws or treaties of the United States," the Petitioner is entitled to the relief.

1.    **The R&R did not apply the well-established Standard of Review**

Contrary to the Magistrate Judge's analysis, (R&R pp. at 5-9) an unlawful detention based on an erroneous sentencing decision is reviewed in two steps. *First*, the Court must ensure that there is no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, or failing to consider the § 3553(a) factors. *See for eg.*, *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir.2008) (quoting *Gall v. United States*, 552 U.S. 38, 51, (2007)) *See also United States v. Blinkinsop*, 606 F.3d 1110, 1114 (9th Cir.2010). [10] The Court applies a harmless error review to any procedural error. *United States v. Neal*, 578 F.3d 270, 274 (5th Cir.2009); *United States v. Rutledge*, 28 F.3d 998, 1003 (9th Cir.1994). *Second*, if the sentence is procedurally

---

10  When determining whether a reversible procedural error during sentencing, we consider whether the court "(1) correctly calculate[d] the Sentencing Guidelines range;  (2) treat[ed] the Guidelines as Advisory;  (3) consider[ed] the 18 U.S.C. § 3553(a) factors;  (4) [chose] a sentence that is not based on clearly erroneous facts;  (5) adequately explain[ed] the sentence;  and (6) [did] not presume that the Guidelines range is reasonable." *United States v. Blinkinsop*, 606 F.3d 1110, 1114 (9th Cir.2010) (footnote omitted) (citing *United States v. Carty*, 520 U.S. 984, 991-93 (9th Cir.2008))

sound or if the procedural error is harmless, the Court "consider [s] the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id.* at 273 (citation and internal quotation marks omitted). In applying this two-step review, the Court reviews the sentencing court's interpretation or application of the Sentencing Guidelines *de novo*, and its factual findings for clear error. *Id. See also United States v. Doe*, 705 F.3d 1134, 1154 (9th Cir.2013).

For the reasons below, since the R&R, in essence, holds that Case 2 sentencing court's failure to appreciate its discretion to consider credit for time served in Case 1, in light of the explicit terms of the plea agreement and its same course of conduct determination, was a procedural error and was not harmless, Petitioner is entitled to the credit for the time served in Case 1. Moreover, an unjustified 111-months for the conduct in the two cases, when the applicable low end of the applicable Guidelines range should have been 78-months, is clearly unreasonable. Therefore, this Court should grant the writ of habeas corpus as Petitioner's detention is "in violation of the Constitution or laws or treaties of the United States."

### 2.    **BOP and/or Sentencing Court Made a Procedural Error**

The R&R, based on a mechanistic analysis, despite the sentencing court's CHC-I determination as Cases 1 and 2 were related and part of the same course of conduct, incorrectly states, Cases 1 and 2 sentences can only run consecutively, and the sentencing court or the BOP had no authority to impose a sentence to run concurrently. (R&R at pp. 6, 8)

Based on the analysis in the R&R, following the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, (2005), sentencing courts *must* conduct a two-part process-first calculating the sentence using the now-advisory Sentencing Guidelines, then applying an individualized assessment using the factors set out in 18 U.S.C. § 3553(a). See *Gall,* 552 U.S. at 49-50. The first of the seven § 3553(a) factors that a sentencing court must consider is a

"broad command to consider 'the nature and circumstances of the offense and the history and characteristics of the defendant.' " *Id.* at 50 n. 6, (quoting 18 U.S.C. § 3553(a)(1)).

Thus, based on the R&R's suggestion (*id.* at pp. 6-7) the sentencing court, at best, in light of the explicit terms of the plea agreement and its relevant conduct determination, misunderstood the relationship between the broad command of § 3553(a) and the Sentencing Guidelines, including the policy statement in § 5k2.23. Even though the Government breached the plea agreement as it did not recommend a credit for the time served for Case 1 ([1] at ¶¶ 81-94) the Court, based on the explicit terms of the plea agreement [11] and the relevant – same course of conduct determination, erred when it did not carry out its mandated task of considering the § 3553(a) factors, including the credit for time served in Case 1. *Carty*, 520 F.3d at 984 (holding that it would be procedural error for a court "to choose a sentence based on clearly erroneous facts").

Thus, in addition to the explicit terms in the plea agreement, the sentencing court was obligated to consider and *articulate* what credit, if any, for the time served in Case 1 was due pursuant to § 3553(a) factors, irrespective of whether the Government made the recommendation or Petitioner was not allowed to make that request. Further, that a sentencing court's failure to recognize its discretion to consider the credit due, based on the totality of circumstances under § 3553(a), is a significant procedural error. *Id.*

---

11  To be sure, as shown in the Petition, [1] at ¶¶ 81-88, and unopposed, the obligation of the parties (Government and Petitioner) for sentencing recommendation purposes, as delineated by the plea agreement, is established in paragraphs 7 and 8, which states in relevant part:
  I agree that a reasonable and appropriate disposition of this case, under the Sentencing Guidelines and 18 U.S.C. § 3553(a), and the sentence to which the parties have agreed, is as follows: ... (5) a sentence at the *low-end of the applicable* Guidelines range (emphasis added).
  * * *
  I also agree that my sentence should be calculated pursuant to the Sentencing Guidelines (See generally U.S.S.G. § 1B1.1.) (2) I understand that the Court, while not bound to apply the Guidelines, must consult those guidelines and take them into account while sentencing, together with those factors set forth in 18 U.S.C. § 3553(a). (3) I also agree that the Sentencing Guidelines Offense Level will be calculated as follows ... (4) I will not ask for any adjustment or reduction in the offense level or for a downward departure from the [applicable] Guidelines range ...

Contrary to the Magistrate Judge's suggestion, nothing in the text of § 3553(a) indicates that Cases 1 and 2 sentences can *only* run consecutively, and the sentencing court had no authority to provide the credit due and the sentencing court was the exclusive means for considering credit for time served in Case 1. (R&R at p. 9).

Section 3553(a) is a broadly worded provision guiding the sentencing court in its exercise of discretion. *See Gall*, 552 U.S. at 49 n. 6. Indeed, § 3553(a)(1) "contains no express limitations as to what 'history and characteristics of the defendant' are relevant." *See also United States v. Vargem*, 2014 WL 1318855* 5 (9th Cir. 2014)

Second, it is in fact presumed that a sentencing court will consider evidence of a previous conduct as part of the mandated consideration of § 3553(a) factors--and, in particular, § 3553(a)(1)--but that it retains discretion as to whether and what weight to give that evidence. *See for eg., United States v. Fraga*, 704 F.3d 432, 440 (5th Cir.2013) (sentencing judge abuses her discretion if she does not articulate why she was declining to place significant weight on Petitioner's cooperation).

This approach is also consistent with the Ninth Circuit's observation that § 3553(a)(1) is a sweeping provision that presumably includes the history of a defendant prior related convictions that might a effect the length of the sentence. *See United States v. Chea*, 231 F.3d 531, 538 (9th Cir.2000) (requiring that the district court "give careful consideration to each of the factors specifically enumerated in the guideline and determine, based on those factors, whether a concurrent, partially concurrent, or consecutive sentence will achieve a reasonable punishment and avoid unwarranted disparity"). In this case, acknowledged in the R&R, the sentencing court did not follow that rule. It did not acknowledge its discretion to impose a concurrent, partially concurrent, or consecutive sentence, despite a CHC-I determination Cases 1 and 2 were the same course of conduct. It did not discuss Petitioner's personal history

24

and characteristics, including, the impact of Wig's engineered Cases 1 and 2. It did not articulate whether it weighed what sentence would constitute just punishment and evaluated "the need to protect the public from further criminal behavior" by Petitioner. It did not deliberate "what [would be] a sufficient but not greater than necessary sentence" under Sentencing Guidelines and § 3553(a), and ultimately chose a sentence in accordance with an application note to §§ 5G1.3 or 5K2.23 in order to recommend a consecutive sentence.

Third, the Magistrate Judge allows a Sentencing Guideline rule regarding "departures" from the guidelines to preclude consideration of factors relevant to "variances" from the guidelines and conflates two distinct categories under post-*Booker* sentencing law.

A "departure" is typically a change from the final sentencing range computed by examining the provisions of the Guidelines themselves. It is frequently triggered by a request by the prosecution or defense ... or by other factors that take the case "outside the heartland" contemplated by the Sentencing Commission when it drafted the Guidelines for a typical offense. A "variance," by contrast, occurs when a judge imposes a sentence above or below the otherwise properly calculated final sentencing range based on application of the other statutory factors in 18 U.S.C. § 3553(a). *United States v. Rangel*, 697 F.3d 795, 801 (9th Cir.2012) (citation omitted), cert. denied, --- U.S. ----, 133 S.Ct. 1294 (2013). These categories have continuing importance not least because of the sort of review each occasions.

While a properly granted departure would reflect a proper application of the Sentencing Guidelines and be entitled to a presumption of reasonableness, a variance under § 3553(a) could be granted absent a recommendation to effect a 'reasonable' sentence, and, thus, would be entitled to the same presumption. *United States v. Blue*, 557 F.3d 682, 686 (6th Cir.2009) (internal quotation marks omitted) (citing *Rita v. United States*, 551 U.S. 338, 347 (2007)). Thus, contrary to the suggestion in the R&R, a court must consider whether

25

credit for Case 1 should be determined under § 3553(a)(1) even in the absence of a request by the prosecution or defense. This Court, thus, must still decide whether the sentencing court committed a significant procedural error by failing to appreciate its discretion in the instant case, in turn, resulting in the error by BOP in executing the sentence.

Under other circumstances, it is held that a sentencing court procedurally errs when it failed to appreciate its discretion under § 3553(a) due to a misinterpretation of the Sentencing Guidelines. *See United States v. Burns*, 526 F.3d 852, 862 (5th Cir.2008) (holding that defendant was "entitled to have his sentence set by a judge aware of the discretion that *Kimbrough [v. United States*, 552 U.S. 85 (2007),] has announced").

The rationale of *Burns* applies with equal force here: a sentencing court commits procedural error if it fails to appreciate its discretion to consider evidence of a prior conviction in order to determine if any credit should be given for time served under § 3553(a). *See id.* at 861 (vacating sentence and remanding to district court to exercise its discretion correctly under § 3553(a) in light of *Kimbrough*, which was decided between the district court's sentence and the defendant's appeal).

Applying this test, this Court should conclude, contrary to the suggestion in the R&R, that the sentencing court did fail to appreciate its discretion to consider what credit should be given for time served in Case 1 under § 3553(a). The sentencing court determined that Petitioner used monies he received from the Case 2 offense conduct to repay his relatives in Case 1, so they would not report the Case 1 conduct to law enforcement, (R&R at p. 6) and consequently, found that Cases 1 and 2 were related and part of the same scheme and/or course of conduct, and ordered the sentence to be calculated with a CHC-I. (R&R at p. 9). The Court, in essence, questioned the prosecutions' motive to bring two separate prosecutions, when they could have and should have charged Petitioner for the offense conduct in Cases 1

26

and 2 in one case. *Id.* No answers were provided. The court, however, did not make a § 3584, concurrent/consecutive determination. [1] at ¶¶ 29-30. The sentencing court clearly concluded it did not have the authority, and that conclusion was a significant procedural error.

### 3.    The Procedural Error was not Harmless

Not all procedural errors require relief; a court may not change the sentence in spite of a procedural error if that error is harmless--that is, if "the error did not affect the district court's selection of the sentence imposed." *United States v. Delgado-Martinez*, 564 F.3d 750, 753 (5th Cir.2009) (quoting *Williams v. United States*, 503 U.S. 193, 203 (1992)). "The proponent of the sentence has the burden of establishing that the error was harmless." *Neal*, 578 F.3d at 274. If "a district court is mistaken about its authority to consider some factor during sentencing ... then the Petitioner is entitled for relief, unless 'it is clear ... that the district court would have imposed the same sentence had it known that it could consider' that factor." *United States v. Garcia*, 655 F.3d 426, 432 (5th Cir.2011) (quoting *United States v. Davis*, 316 Fed.Appx. 328, 332 (5th Cir.2009) (unpublished) (per curiam)).

In light of this stringent standard for finding harmless error, this Court should hold that the sentencing court's procedural error was not harmless. The Court's reasoning in *Burns* is instructive. In that case, the defendant asked the district court to exercise its discretion to reduce his sentence based on the then-existing disparity in treatment of crack cocaine and powder cocaine offenses under the Sentencing Guidelines. 526 F.3d at 860; *see also Garcia*, 655 F.3d at 432-33 (discussing *Burns*). [12] In response, the district court explained that it did not possess such discretion:

---

12  At the time of Burns's sentencing, the Sentencing Guidelines reflected a 100:1 ratio of crack to powder, "meaning that for purposes of sentencing, one gram of crack cocaine was considered the equivalent of 100 grams of cocaine powder." *Burns*, 526 F.3d at 860. Burns argued that his sentence would have been significantly lower if the court had used the Guidelines applicable to powder cocaine, rather than crack. *Id.*

> I recognize what you claim, which is claimed not only by you but by others ... of the disparity between crack cocaine and cocaine sentencing. And that argument has been—discussion and debate has been going on in circuit courts and in the Congress and among the Sentencing Commission, but the guidelines are what the guidelines are today.... The Court finds that the facts do not warrant a downward departure ... for taking into consideration the difference between crack cocaine crimes under the guidelines and cocaine offenses under the guidelines as a decision that's been made by the Congress of the United States and the Sentencing Commission. The Court finds it has no—limited discretion, if any. And if I do have discretion, I exercise my discretion not to downward depart on that basis.

526 F.3d at 860-61 (alterations in original) (emphasis added). But, in fact, the district court in *Burns* did have that discretion according to the Supreme Court's subsequent decision in *Kimbrough v. United States*, 552 U.S. 85, 110 (2007). [13]

On appeal, the Government argued that the district court's statements—"the facts do not warrant a downward departure" and "if I do have discretion, I exercise my discretion not to downward depart"—showed that the error was harmless. *Burns*, 526 F.3d at 861. The Fifth Circuit disagreed:

> Read in context, the district court's statement is that Burns is not entitled to a downward departure under the Sentencing Guidelines. This would mean that *Burns*'s case was not atypical or unusual and fell within the "heartland" of the Sentencing Guidelines. *United States v. Winters*, 174 F.3d 478, 482 (5th Cir.1999) ("a district court cannot depart from the guidelines unless it first finds ... that facts or circumstances remove the case from the 'heartland' of typical cases encompassed within the guideline."). The *Kimbrough* issue has a different focus. We cannot tell from the record whether, if the judge had known that he could consider policy disagreement as an additional factor in the "array of factors warranting consideration" in his analysis under 18 U.S.C. § 3553(a), it would have affected the ultimate sentence imposed on Burns.

*Id.* at 861-62 (alteration in original). Accordingly, the Court vacated Burns's sentence on the basis that he was "entitled to have his sentence set by a judge aware of the discretion that *Kimbrough* has announced." *Id.* at 862.

---

13 The Supreme Court issued *Kimbrough* in between Burns's sentencing and his appeal. *Burns*, 526 F.3d at 861. *Kimbrough* held that a sentencing court could "conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes." 552 U.S. at 110.

As it was subsequently explained in *Garcia*, "*Burns* sets a high bar." 655 F.3d at 433. Indeed, "[a] district court's mistaken belief regarding its authority under the guidelines is not harmless even where it states that the modified sentence is appropriate in light of other factors and that even if it had discretion to analyze the supposedly impermissible factor, that factor would not affect the sentence." *Id.* The *Garcia* opinion further explained that the district court's statements in *Burns* did not "make it obvious that it would have imposed the same sentence had it been aware of its authority." *Id.*

Turning to the present case, as it is conceded (R&R at 7), [14] this Court should find even stronger reasons for holding that the error was not harmless. In *Burns*, the district court included the caveat that it would have imposed the same sentence even if it had considered the supposedly impermissible factor. 526 F.3d at 861 ("And if I do have discretion, I exercise my discretion not to downward depart on that basis."). But here, the sentencing court never specifically addressed or weighed any credit that was due for the time served in Case 1 in its statements about what it might have done. And critically, the sentencing court did not say that the court would have reached the same conclusion even considering the credit for time served in Case 1 under the § 3553(a) factors in light of a CHC-I determination. Because in *Burns* it did not show the error to be harmless, neither should it be considered harmless here.

Furthermore, as the Fifth Circuit explained in *United States v. Ibarra-Luna*, 628 F.3d 712 (5th Cir.2010), the harmless error doctrine places a "heavy burden" on the proponent of a sentence to convincingly demonstrate that the sentencing court actually would have followed the very same reasoning absent the error. *Id.* at 717. Respondents do not refute Petitioner's position in the Petition, Respondents have not met its heavy burden. Rather, the record supports vacating Petitioner's sentence and granting the credit due.

---

14 "There is no indication in the record that the sentencing court intended to adjust Petitioner's sentence under Section 5K2.23." (R&R at p. 7)

### 4.    **The Sentence is Unreasonable**

"A substantively reasonable sentence is one that is 'sufficient, but not greater than necessary' to accomplish § 3553(a)(2)'s sentencing goals." *United States v. Crowe*, 563 F.3d 969, 977 n. 16 (9th Cir.2009) (quoting 18 U.S.C. § 3553(a)). "The touchstone of 'reasonableness' is whether the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)." *United States v. Ressam*, 679 F.3d 1069, 1089 (9th Cir.2012) (en banc).

The R&R ignores that based on the Sentencing Guidelines, had Cases 1 and 2 sentences been charged as one case or consolidated into one case, applying the rule of U.S.S.G. § 3D1.2(d), the total alleged harm, by ignoring the exculpatory evidence (*e.g.*, [1] at p. 15, n. 9), caused in both cases would have been the basis for the Guideline calculation. The overall loss, solely for the purposes of sentencing, then, would have been $2,953,250 (Case 1 - $975,000 + Case 2 - $1,978,250). The Guideline for the consolidated cases would have been Level 28, Criminal History 1, or 78-97 months. However, because they were pursued separately, Petitioner was sentenced to 48-months in Case 1 and 63-months in Case 2, for a total of 111-months, some 33-months more than the Guidelines range if they were joined.

Despite the fact that the R&R makes no mention of it, it is well settled, a total of 111 months for the conduct in the two cases, based on the Case 2 sentencing court's findings and determinations is clearly unreasonable and does not meet the test of "reasonableness" espoused in *United States v. Booker*, 543 U.S. 220 (2005). *See for eg.*, *United States v. Taylor*, 648 F.3d 417, 429 (6th Cir. 2011) (a district court that did not "consider the merits of a statutorily relevant sentencing argument" is deemed unreasonable); *United States v. Dorvee*, 616 F.3d 174, 183-184 (2d cir. 2010) (finding a within-Guidelines child pornography-distribution sentence unreasonable); *United States v. Paul*, 561 F.3d 970, 975 (9th Cir. 2009)(a

sentence where a district judge repeatedly gives excessive weight to only one factor is unreasonable); *United States v. Omole*, 523 F.3d 691, 700 (7th Cir. 2008)(a sentence where there is a lack of "compelling justification" for the sentence is unreasonable); *United States v. Martin*, 371 F.App'x 602, 606 (6th Cir. 2010) (a sentence where the district court is silent as to the concurrent-or-consecutive question-- even though § 3584(a) provides default rules for silence in that context is unreasonable).

In *United States v. Peltier*, 505 F.3d 389, 391-92 (5th Cir.2007), the Circuit Court found that under *Booker*, 543 U.S. at, 261 an "unreasonable" sentence equates to a finding of plain error. Without discussing, whether the sentence, in light of the totality of the circumstances, resides within the expansive universe of a reasonable sentence, the R&R erroneously suggests: (i) Petitioner is not entitled to run his two sentences concurrently pursuant to 18 U.S.C. § 3584(a) (R&R at pp. 5-6); (ii) Petitioner is not entitled to have the Bureau reduce his sentence to account for time spent in custody for case 1 (R&R at p. 6-8); (iii) Petitioner has failed to demonstrate that he is entitled to relief relating to the Bureau of Prison's execution of his sentence. R&R at pp. 8-9.

Relying on *United States v. Labeille Soto*, 163 F.3d 93, 99-100 (2d Cir.1998), (R&R at p. 6), the Magistrate Judge suggests that 18 U.S.C. § 3584(a) – imposition of concurrent term of imprisonment is inapplicable to Petitioner's sentences, as it applies to multiple terms of imprisonment, imposed at the *same* time or to a term of imprisonment imposed on a defendant who is subject to an *undischarged* term of imprisonment. (R&R at pp. 5-6) And as Petitioner, according to the Magistrate Judge's-mechanistic-devoid-of-reasonableness-analysis, satisfied his term of imprisonment in Case 1 prior to being sentenced in Case 2, he is not eligible for his case 2 sentence to run concurrently "in practical effect" to Case 1. (*id.* at p. 6)

Unlike the facts in Petitioner's case, in *Labeille Soto* it was held that a district court could not make a new prison term run concurrently with a prison term that had already been completed, because such credit would be inappropriate given the seriousness of Labeille's state crime (Case 1 – for selling narcotics) and the fact that it was *unrelated* to his federal crime (Case 2 – illegal reentry). 163 F.3d at 97

The Court, however, fatal to the Magistrate Judge's mechanistic analysis, hypothesized that to achieve a reasonable sentence such credit might be given to a defendant prosecuted at different times for state and federal offenses (even if discharged) that were "*part of a single transaction*," which would make it reasonable "to view it as one overall package" and to combine the punishments." *Id.*

Incredibly, despite this holding in *Labeille Soto*, the Magistrate Judge finds the first sentence in § 3584(a) to say that "terms [of imprisonment] may run concurrently or consecutively" *only* "[i]f multiple terms of imprisonment are imposed ... at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment." *id.* Since the Case 1 sentence was discharged, the Magistrate Judge, suggests, the case 2 sentence could not be ordered to run concurrently, (R&R at p. 5), "in practical effect."

In *Labeille-Soto*, 163 F.3d at 101, the court held: "A sentencing court may depart, "impos[ing] a sentence outside the range established by the applicable guideline, if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.' " Guidelines § 5K2.0 (quoting 18 U.S.C. § 3553(b)).

In the present case by negating the findings that cases 1 and 2 were related, to suggest a

total of 111-months for the conduct in the two cases, when the applicable low end of the applicable Guidelines range computes a 78-months sentence, is clearly unreasonable. The Magistrate Judge erred to suggest otherwise.

Petitioner's right to due process was violated when the sentencing court did not articulate the reasons to allegedly deny credit for the time-served in Case 1, and independently BOP violated Petitioner's right to due process when BOP negated an assumption of fact upon which Case 2 sentencing judge relied upon when determining the Case 2 sentence. BOP has a duty, mandated by due process, to execute sentences in a manner that is consistent with the intent and beliefs of the sentencing judge and understanding of the parties by virtue of the plea agreement as well as the sentencing court's intents and beliefs. The R&R should be vacated and the Petition should be granted.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that all Petitioner's filings and the Magistrate Judge's Report and Recommendations should be reviewed *de novo* and the Magistrate Judge's Report and Recommendations should be reversed and the case remanded for further proceedings consistent with the District Court's opinion.

September ⎯10th⎯, 2014

Lal Bhatia
Reg. No. 97562-011
Adams County Correctional Center
P.O. Box 1600
Washington, MS 39190

33

## CERTIFICATE OF SERVICE

I, Lal Bhatia, hereby certify that I served the:

## PETITIONER LAL BHATIA'S OBJECTION TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS

which is deemed filed at the time it was deposited at Adams County Correctional Center's depository for legal mail in accordance to *Houston v. Lack*, 108 S.Ct 2379 (1988), by placing the aforesaid brief in a sealed first class postage paid envelope addressed to:

Clerk, U.S. District Court,
Southern District of Mississippi;
501 E. Court Street, Suite 2.500
Jackson, Mississippi, 39201

U.S. Magistrate Judge, Micheal T. Parker
United States District Court
Southern District of Mississippi;
501 E. Court Street, Suite 2.500
Jackson, Mississippi, 39201

U.S. District Judge, David Bramlette,
United States District Court
Southern District of Mississippi;
501 E. Court Street, Suite 2.500
Jackson, Mississippi, 39201

Angela Givens Williams
Assistant United States Attorney
United States Attorney's Office
Southern District of Mississippi
501 E. Court Street, Suite 4.430
Jackson, Mississippi 39201

As this case is designated as an E-Filing case, the Clerk is requested to kindly forward this filing to all other parties signed to receive electronic notifications from the Court regarding this case.

Dated: September ___, 2014,

Lal Bhatia

34